582 So.2d 195 (1988)
Jill Sullivan SHAW
v.
Curtis H. EVERETT, B.R. Eubanks, Lloyd F. Azcona, Jr., Rene C. Azcona, Henry L. Klein, John Olagues, Dan Foley, in His Official Capacity as Clerk of Court of the Civil District Court for the Parish of Orleans, State of Louisiana, W. Paul Anderson and Gary P. Rouse.
No. CA-8615.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
*196 Darleen M. Jacobs, Brian C. Beckwith, New Orleans, for plaintiff/appellant.
Robert N. Ryan, Celeste Brustowicz, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for defendants/appellees.
W. Paul Anderson, pro se, Leake & Anderson, New Orleans, for defendant/appellee (W. Paul Anderson).
Before GARRISON, LOBRANO and WILLIAMS, JJ.
LOBRANO, Judge.
Plaintiff, Jill Shaw (Shaw) appeals the dismissal of her suit against W. Paul Anderson and Gary P. Rouse on exceptions of no cause of action.
The exception of no cause of action must be decided on the face of the petition and no evidence may be introduced to support or controvert that exception. La.C.C.P. Art. 931. All well pleaded allegations of the petition must be assumed as true, and any doubt should be resolved in favor of the petition. Darville v. Texaco, 447 So.2d 473 (La.1984); Barnett v. Develle, 289 So.2d 129 (La.1974).

FACTS:
Plaintiff's lengthy and well articulated petition sets forth the following assumed facts.
Jill Shaw is the former wife of Lloyd Azcona. As part of a child support and community property settlement, Shaw alleges that her ex-husband assigned to her his ½ interest in a promissory note payable to him and his brother, Rene Azcona. The makers of this note are Curtis H. Everett and Billy Ray Eubanks.
As a result of the assignment to Shaw, the note was placed with Hibernia Bank for collection. This transfer occurred in February 1982.
It is further alleged that in December of 1982, Lloyd Azcona then executed another assignment of the final two installments on the note (the last payment being a balloon payment) to John Olagues. When Shaw became aware of this second assignment by her husband, she instituted a suit entitled "Jill Shaw v. Lloyd F. Azcona, Jr." No. 83-19763 wherein she sought to be declared the owner of a one-half interest in the note. In response to that suit, the Hibernia Bank invoked a concursus proceeding and placed the note, and the second to last payment in the registry of the Court, as the final installment was not yet due. Eubanks, one of the makers, intervened asserting a set off against the final payment.
Unknown to Shaw, Hibernia and their respective attorneys, on June 17, 1985, while the concursus was pending, Lloyd Azcona, through his attorney, Henry Klein, obtained the note from the court registry. It is alleged that Klein presented a motion to withdraw the note to a Civil District Court judge, other than the one allotted the case. Upon assurances from Klein that there was no objections to its withdrawal, the order was signed.
Shaw then alleges that Eubanks and his attorney, W. Paul Anderson, Lloyd Azcona and his attorney, Klein, Rene Azcona and his attorney, Gary P. Rouse and a representative of John Olagues met that same day to compromise the final balloon payment due. As a result of that meeting, a compromise agreement was executed, the note was marked paid, the mortgage securing it was cancelled and the proceeds were distributed to the Azcona brothers and Olagues.
At the subsequent trial in the concursus proceedings, Shaw was recognized as owner of one-half interest in the note. That judgement is final.
The present litigation was instituted by Shaw seeking payment of her one-half interest, as well as damages for the alleged acts of the various parties in depriving her of the proceeds, and the security of the mortgage. Among the named defendants are Rene Azcona's attorney, Gary P. Rouse and Eubanks' attorney, W. Paul Anderson. They were dismissed on exceptions of no cause of action, and Shaw's appeal only concerns her claims against them.
The specific allegations against Rouse and Anderson are set forth on the attached exhibit. Summarizing, Shaw asserts they *197 intentionally and/or negligently participated in the distribution of the final payment on the note, and in the accompanying compromise agreement, knowing that Shaw had a pending claim to the note; and, further that they had knowledge of Klein's withdrawal of the note from the court registry under false representations.
Rouse and Anderson argue that Shaw was not their client, and therefore they owed her no duty. Thus there can be no cause of action against them. In support of their position, they cite numerous cases which have consistently held that absent the attorney-client relationship, or privity of contract, there can be no breach of a non-existent duty.
Shaw readily admits the Louisiana jurisprudence cited by Rouse and Anderson. And, even though she alleges intentional acts in her petition, in her brief to this court she argues only a negligence claim. However, she asserts that Rouse and Anderson breached a professional duty owed to the Courts by allowing the removal and payment of the note with full knowledge of her outstanding claim. As attorneys participating in the concursus proceedings they were well aware that a judgment had not yet been rendered, and thus breached a professional duty that resulted in damages to Shaw.
While we agree with the rationale in C & V Gravel, Inc. and Maco Construction Corp., 465 So.2d 938 (La.App.2nd Cir. 1985), which holds that an attorney does not owe a duty to a non-client plaintiff, we perceive the issues in this case to be different. Specifically, the issue for our review is whether a non-client can assert a claim for damages against an attorney for the negligent breach of a professional obligation he owes the Court, his profession and the public. In response to that specific question, Rouse and Anderson argue that the sole remedy is appropriate disciplinary proceedings. We disagree.
Amended Article XVI of the Articles of Incorporation of the Louisiana Bar Association, effective January 1, 1987, provide the rules of professional conduct for the members of the Louisiana Bar. Those rules set forth an attorney's responsibilities to his client, the Courts and the public. We note the following provisions.
"Rule 1.2 SCOPE OF REPRESENTATION
* * * * * *
(c) A lawyer shall not counsel a client to engage, or assist a client to engage in conduct that the lawyer knows is criminal or fraudulent,...." (emphasis added)
"Rule 1.15 SAFEKEEPING PROPERTY
* * * * * *
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person." (emphasis added)
"Rule 3.3 CANDOR TOWARD THE TRIBUNAL
(a) A lawyer shall not knowingly:
* * * * * *
(2) conceal or knowingly fail to disclose that which he is required by law to reveal; however, if a lawyer discovers that his client has perpetrated a fraud on a tribunal he shall promptly call on his client to rectify same and if, the client shall refuse to do so or be unable to do so, the lawyer shall reveal the fraud to the affected person or tribunal;" (emphasis added)
Assuming as true the allegations that Rouse and Anderson knew the order authorizing release of the note was obtained through false representation, and that they were aware of the pending claim of Shaw in the concursus proceedings, it can be reasonably concluded that the trial court may find a breach of a professional responsibility. And, we know of no rule of law which mandates disciplinary action as a sole means of redress.
The Rules of Professional Conduct do not exist in a vacuum. Their intent is to provide the standard of conduct by which the legal profession is to conduct itself with relation to clients, the judicial system and the public. And, one may negligently *198 or intentionally breach those rules. A party aggrieved by a breach should be able to seek redress through the courts.
Therefore, based on the allegations of the petition we hold that Shaw has stated a cause of action. The same duty risk analysis of any action in negligence must be applied to the totality of the facts as they are presented at the trial of this matter.
Appellees to pay all costs of this appeal.
REVERSED AND REMANDED.

EXHIBIT
RENE C. AZCONA, LLOYD F. AZCONA, JR., HENRY L. KLEIN, GARY P. ROUSE, W. PAUL ANDERSON, AND JOHN OLAGUES
a.) Causing the original promissory note dated June 29, 1978 to be withdrawn from the custody of the Clerk of this Court on June 17, 1985 for the purpose of accepting payment thereon from defendant, B.R. EUBANKS and CURTIS H. EVERETT, despite knowledge that the ownership of the promissory note was in dispute and subject to a lawfully invoked concursus proceeding, with the purpose of intentionally and/or negligently removing any proceeds there received from the control of petitioner and this Honorable Court;
b.) Accepting payment on the sixty-first (61st) and final installment from defendants, B.R. EUBANKS and CURTIS H. EVERETT, intentionally or with negligently reckless disregard for the competing claim of petitioner to one-half (½) of the proceeds received;
c.) Causing the original promissory note to be marked "Paid" and paraphed ne varietur to an "Agreement to Compromise" dated June 17, 1985 without the knowledge or participation of petitioner;
d.) Compromising the intervention of B.R. EUBANKS into Suit No. 83-19763, without the knowledge or participation of petitioner;
e.) Not depositing the proceeds received from defendants, B.R. EUBANKS and CURTIS H. EVERETT, on June 17, 1985 into the registry of the Civil District Court for the Parish of Orleans in lieu of the original promissory note pending a final resolution of the competing claim thereto in Case No. 83-19763;
f.) Distributing the proceeds to defendants, RENE C. AZCONA, LLOYD F. AZCONA, JR., and JOHN OLAGUES, on June 20, 1985 without the knowledge or participation of petitioner;
g.) Causing the mortgage which secured the indebtedness arising out of the June 29, 1978 EVERETT promissory note to be cancelled in the office of the Orleans Parish Recorder of Mortgages on or about June 17, 1985, without the knowledge or participation of petitioner, and with reckless disregard for her competing claim to the proceeds of the promissory note;
h.) Causing the original promissory note to be returned to the Clerk of this Court in a defaced condition without the knowledge or participation of petitioner;
i.) Intentionally and/or negligently causing plaintiff to incur additional legal expenses and attorney fees to protect her interests; and
j.) Other acts of intent and/or negligence to be proven at the trial of this matter.